IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| vs. | : | |
| | : | |
| KAREN BATTLE | : | NO. 08-442-3 |

## MEMORANDUM

**PRATTER, J.**                                                                        FEBRUARY 8, 2010

## INTRODUCTION

Karen Battle was convicted by a jury of one count of conspiracy to commit credit card fraud, two counts of credit card fraud and aiding and abetting[1] and aggravated identity theft and aiding and abetting. She was acquitted by the jury on two other counts of credit card fraud. Ms. Battle, through new counsel, has timely moved to vacate the jury's verdict or for a new trial. For the reasons that follow, the Court denies the motion.

## BACKGROUND

Over the course of several months in 2006 a cohort of conspirators preyed principally upon visitors to Valley Forge Park by breaking into vacant parked cars and stealing credit cards and bank cards out of purses and wallets left in the cars while the owners hiked, biked or otherwise enjoyed the Park's pleasures. The conspirators used the stolen cards to purchase goods at various department stores and other establishments (primarily in the King of Prussia or Willow Grove malls), either retaining the goods for their personal use or selling the ill-gotten merchandise to a fence for 50% of the item's retail value. According to the Government's theory

---

[1] One such count concerned a stolen ATM debit card belonging to victim M.M. The other count involved a Bloomingdale's credit card belonging to victim V.G.

of the case - - and the evidence submitted by the Government at trial - - Ms. Battle's role in this scheme was primarily to rent cars on behalf of the conspirators (including Ms. Battle's boyfriend) who actually patrolled the parking lots in the rented vehicles to choose the cars to be broken into before heading off on the illegal shopping sprees. The Government also contended - - and offered evidence in support of the contention - - that Ms. Battle benefitted from the ill-gotten proceeds, sometimes by putting in her order for specific goods to be "purchased" by her co-conspirator boyfriend, and sometimes by personally participating in the shopping.[2]

At the close of the Government's case, Ms. Battle moved pursuant to Rule 29 of the Federal Rules of Criminal Procedure, seeking an order from the Court entering a judgment of acquittal. The Court denied the motion at that time. Following the submission of all the evidence, the defense again indicated an intention to move for a judgment of acquittal, which intention came to fruition with the entry of appearance by new counsel[3] and the filing of the pending motion which asks the Court to vacate the verdict, enter judgment of acquittal on Count 10 of the charges which carries a mandatory minimum two-year sentence, and order a new trial on all charges. Ms. Battle claims there was insufficient evidence to support her conviction on identity theft charges and that the jury's verdict was contrary to the weight of the evidence as to the counts on which she was convicted.

**STANDARD OF REVIEW**

Once a jury has rendered a verdict, in order to overturn it, the Court must be convinced

---

[2] One such shopping trip was recorded by the store's video camera, the recording of which was presented to the jury. That video is discussed below.

[3] There is no substantive challenge by the Government to the timeliness of the present motion.

that, on the record presented and viewing the evidence in the light most favorable to the Government, no reasonable jury could have found each element of the crime alleged to have been proven beyond a reasonable doubt. United States v. Reyeros, 537 F.3d 270, 277 (3rd Cir. 2008); United States v. Gonzalez, 918 F.2d 1129, 1133 (3rd Cir. 1990). As part of this review process, the Government's evidence must be viewed in conjunction and as a whole rather than in isolation. United States v. Brodie, 403 F.3d 123, 134 (3rd Cir. 2005). Issues of credibility must be resolved in the light most favorable to the Government. Gonzalez, 918 F.3d at 1133. It is essential that the Court resist for all purposes usurping the jury's role in assessing credibility and assigning weight to the evidence; likewise, the Court is admonished to refrain from substituting its judgment for that of the jury. Brodie, 403 F.36 at 133.

Against the foregoing backdrop, the weakness of Ms. Battle's argument is escapable.

## **DISCUSSION**

Ms. Battle moves for acquittal on Count 10 (aggravated identity theft and aiding abetting). Claiming that only speculation supports her conviction on these charges, Mr. Battle argues that no evidence was available for the jury to base its conclusion that she knowingly used (or aided and abetted the knowing use) of another's identification. Ms. Battle is mistaken.

At trial the jury watched an in-store video film of Ms. Battle, along with co-conspirator Ulonda Lewis, shopping on October 2, 2008 at Bloomingdale's, using V.G.'s store credit card. Ms. Lewis testified at trial about her shopping trip that day with Ms. Battle. The jury saw Ms. Battle facilitate Ms. Lewis's completion of the credit transaction as well as her own use of V.G.'s card. The jury had much more available to them concerning the scope of Ms. Battle's participation. According to Ms. Lewis, Ms. Battle had virtually planned the shopping spree and

made useful advantage of passing the stolen card back and forth to Ms. Lewis while they were shopping. As one could see on the tape, Ms. Battle assisted Ms. Lewis with Ms. Lewis's use of the stolen card and also herself used V.G.'s card and signed for a purchase. Ms. Lewis told the jury that Ms. Battle had initiated the October 2 shopping trip and developed a system to use V.G.'s credit card. Ms. Lewis also reported that Ms. Battle facilitated the use of more than one credit card on the October 2 shopping excursion. According to Ms. Lewis, Ms. Battle was well aware of how the credit cards were secured from the victims' cars. Indeed, Ms. Lewis told the jury that Ms. Battle was present when another Bloomingdale's credit card was stolen, along with other identifying information, and fraudulently used later in the day it had been stolen.

Other evidence presented to the jury during the trial well documented Ms. Battle's participation in excess of $3,000 worth of purchases or transactions during a single day's shopping at Bloomingdale's. Ms. Lewis also told the jury that Ms. Battle accompanied Ms. Lewis and defendant Devin Williams to Valley Forge Park on one excursion. Although Ms. Battle did not break into a car at that time, the conspirators she accompanied that day did so. Then, when they brought the fruits of their illegal labors back to the car where Ms. Battle was waiting, she opined "That was fast." As soon as Ms. Lewis returned the now wallet-less pocket book to the car, the conspirators all went shopping with the stolen cards.

The jury also heard testimony about Ms. Battle calling her co-conspirator boyfriend while he and others were on the road looking for suitable opportunities for stealing credit cards. During that call Ms. Battle delineated in precise detail the high-end merchandise she wanted the "shoppers" to get for her. The items she wanted were so expensive that it necessitated prolonged searching for suitable credit cards.

4

Another feature of the Government's case against Ms. Battle was the evidence that Ms. Battle regularly shopped at a particular neighborhood Pathmark grocery store, using her own credit card. Then, soon after the theft of the M.M. ATM debit card, that stolen card was used at the Pathmark frequented by Ms. Battle in Cheltenham, Pennsylvania, (but no evidence suggested any other participant's involvement).

Even without regard for the obligation of the Court to consider the evidence in the light most favorable to the prosecution, the confluence of this evidence was more than sufficient for the jury to conclude, beyond a reasonable doubt, that Ms. Battle conspired to commit credit card fraud, committed credit card fraud (and aiding and abetting) as to the V.G. Bloomingdale's credit card and as to M.M.'s debit card and committed aggravated identity theft and aiding abetting .

## **CONCLUSION**

Accordingly, for the foregoing reasons, neither the motion for acquittal nor the motion for a new trial can or should be granted. Ms. Battle's convictions are affirmed. An Order consistent with this Memorandum follows.

BY THE COURT:

  /s/ Gene E.K. Pratter  
Gene E. K. Pratter  
*United States District Judge*